**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

LINCOLN BENEFIT LIFE COMPANY,

Plaintiff,

v.

WILMINGTON TRUST, N.A., as Securities
Intermediary, and GREGORY BAYDIUK

Defendants.

Civil Action No. 25-2728 (JXN)(AME)

**OPINION**

**NEALS**, District Judge

In this case, the Court must determine whether it may hear a dispute over a $10 million life insurance policy ("Policy") with connections to both New Jersey and New York. The Policy was applied for in New Jersey and issued on a New Jersey-approved form. Yet the Policy insured a New York resident and was solicited by a New York insurance agent. After the insured passed away, her husband, Gregory Baydiuk ("Baydiuk"), and the current owner of the Policy, Wilmington Trust, N.A. ("Wilmington") (collectively, "Defendants"), filed separate lawsuits in New York each claiming they are the Policy's sole beneficiary. Wilmington's case is pending in the Southern District of New York ("S.D.N.Y."). The insurer, Lincoln Benefit Life Company ("Plaintiff"), filed an action in this Court to declare the Policy void, or in the alternative, for a declaration as to the rightful beneficiary.

Before the Court are Wilmington and Baydiuk's respective motions (ECF Nos. 22, 41) to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2),[1] transfer the case to S.D.N.Y. under 28 U.S.C. § 1404(a), or stay the case pending the

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

outcome of Wilmington's lawsuit. Plaintiff opposed (ECF Nos. 29, 42), and Defendants replied (ECF Nos. 35, 43). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions to dismiss, transfer, or stay the case (ECF Nos. 22, 41) are **GRANTED in part**. The motions to dismiss are **DENIED**, the motions to transfer are **GRANTED**, and the motions to stay are **DENIED as moot**.

## I.      BACKGROUND

### A.      Statement of Facts

Plaintiff is a Nebraska life insurance company. (Compl. ¶ 6, ECF No. 1.) Wilmington is a Delaware bank. (*Id.* ¶ 7.) Baydiuk is a New York resident. (*Id.* ¶ 8.)

In February 2008, Plaintiff received an application ("Application") for a $10 million life insurance Policy. (*See id.* ¶ 1, ECF No. 1; Compl. Ex. A ("Policy Application"), ECF No. 1-2; Heinrich Aff. ¶ 3, ECF No. 29-2.) The insured was Ludmila K. Mohler ("Mohler"), a New York resident. (*See* Policy Application.) The primary beneficiary and owner of the policy was "[t]he L K M Life Ins. Trust" ("LKM Trust"), which listed its address as Passaic, New Jersey. (*Id.* at 1–2.) On February 13, 2008, Mohler signed the Application as the "Insured," Alan Goodman ("Goodman") signed on behalf of the "Owner," and Mayer Simon ("Simon") signed the Application as the "Agent." (*Id.* at 6.) The Application was allegedly signed in "Passaic, NJ." (*Id.*) Plaintiff then received a Premium Funding Intent Form, again signed by Mohler as the insured, Simon as the agent, and Goodman on behalf of the LKM Trust. (Compl. Ex. B ("Premium Funding Intent Form"), ECF No. 1-3.) In March 2008, Plaintiff received an amendment to the Application ("Amendment") signed by Mohler, Simon, and Goodman, on behalf of the LKM Trust. (Compl. Ex. C ("Amendment"), ECF No. 1-4.) The Amendment was allegedly again signed in Passaic,

New Jersey. (*Id.*) Later that month, Plaintiff sent Goodman and Simon an illustration of the Policy ("Illustration") for their signatures. (Compl. Ex. D ("Illustration"), ECF No. 1-5.) The Illustration stated the Policy was presented in New Jersey. (*Id.* at 1.) Goodman and Simon signed the Illustration. (*Id.* at 5.)

On March 10, 2008, Plaintiff issued the Policy to the LKM Trust with Mohler as the insured. (*See* Wilmington Ex. 3 ("Policy") at 2–3, ECF No. 22-6.) The Policy listed the LKM Trust's address as Passaic, New Jersey. (*Id.*) The Policy also stated "[t]his [P]olicy is subject to the laws of the state where the application was signed." (*Id.* at 16.) Two years later, in June 2010, the LKM Trust transferred ownership of the Policy to Dukes Bridge LLC ("Dukes Bridge"). (Compl. Ex. E ("Transfer Letter"), ECF No. 1-6.) According to Plaintiff, the Policy changed hands several more times, before Wilmington became its most recent owner. (Compl. ¶ 30; Compl. Ex. F ("Wilmington Letter"), ECF No. 1-7.)

Mohler died in January 2025. (Compl. ¶ 31; Pl. Ex. 7, ECF No. 29-1 at *32.) Soon after, Wilmington submitted a claim for the Policy's death benefit. (*Id.* ¶ 32.) The following month, Baydiuk's attorney informed Plaintiff that "a dispute has arisen concerning the . . . ownership and beneficiary designation of the [Policy]." (Compl. Ex. G ("Baydiuk Letter"), ECF No. 1-8.) Baydiuk thus demanded that Plaintiff not disburse any benefits under the Policy until "adjudication is made concerning the rightful owner and beneficiary of the [Policy]." (*Id.*)

## B.    Procedural History

On March 11, 2025, Baydiuk sued Plaintiff and another defendant[2] in New York state court ("Baydiuk Action") for a declaration that Baydiuk was the rightful beneficiary of the Policy. (*See* Wilmington Ex. 6 ("Baydiuk Complaint"), ECF No. 22-9.)

---

[2] Cambridge Life Settlements, LLC.

Nine days later, on March 20, 2025, Wilmington filed its own lawsuit against Plaintiff in New York state court ("Wilmington Action") for a declaration that Wilmington is the sole rightful owner and beneficiary of the Policy. (*See* Wilmington Ex. 7 ("Wilmington Summons"), ECF No. 22-9; Wilmington Ex. 8 ("Wilmington First Am. Compl."), ECF No. 22-10.) Plaintiff removed the Wilmington Action to S.D.N.Y. in May 2025. (*See* Nemecek Decl. ¶ 9, ECF No. 22-5.) Two months later, Wilmington amended its complaint to add Baydiuk as a defendant. (*See* Wilmington First Am. Compl.)

Amid the Baydiuk and Wilmington Actions, Plaintiff filed this lawsuit against Defendants on April 15, 2025. (*See* Compl.) Plaintiff alleges the LKM Trust had no insurable interest in Mohler's life. (*Id.* ¶ 28.) Instead, Plaintiff claims the LKM Trust was a front for strangers to take out a life insurance policy on Mohler and bet on her death. (*Id.*) Plaintiff, therefore, seeks declarations that: (1) the Policy is void as an illegal "death gambling" contract; and (2) the Policy is void because the LKM Trust had no insurable interest in Mohler's life; and (3) if the Court found the policy valid, Plaintiff requests declaratory judgment to determine the rightful beneficiary. (*Id.* ¶¶ 36–53.)

Wilmington moved to dismiss, transfer, or stay the action on August 7, 2025. (*See* Wilmington Mot., ECF No. 22.) Wilmington argued the Court lacked personal jurisdiction over Wilmington because it was not incorporated in New Jersey, did no business in New Jersey, and had no contacts with New Jersey related to the Policy. (*Id.* at 14–23.) Alternatively, Wilmington argued the action should be transferred to S.D.N.Y. because it could have been brought in S.D.N.Y. and the private and public interest factors favor transfer. (*Id.* at 23–29.) Wilmington also argued that, if the Court declined to dismiss for lack of personal jurisdiction or transfer to S.D.N.Y., the Court should instead stay the action pending the outcome of the Wilmington Action. (*Id.* at 29–

32.) In Wilmington's telling, because Wilmington filed its action in New York first and the actions are identical, the "first to file" rule requires this Court to stay the action awaiting an outcome in the Wilmington Action. (*Id.*) Plaintiff opposed (Opp'n to Wilmington, ECF No. 29), and Wilmington replied (Wilmington Reply, ECF No. 35).

Baydiuk moved to join Wilmington's motion under Rule 10(c) and Local Civil Rule 7.1(c) and adopted the arguments Wilmington made. (Baydiuk Mot., ECF No. 41.) Plaintiff opposed (Opp'n to Baydiuk, ECF No. 42), and Baydiuk replied (Baydiuk Reply, ECF No. 43).

## II.    <u>LEGAL STANDARD</u>

### A.    **Rule 12(b)(2)**

Rule 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction, "plaintiff bears the burden of establishing the court's jurisdiction over the moving defendants." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Plaintiff must "sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* at 101 n.6 (quoting *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir.1990)). At no point may Plaintiff rely on the pleadings alone. *Id.* However, if the Court does not hold an evidentiary hearing on the motion, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id.* at 97.

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Id.* at 96. New Jersey law "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4–4(c)).

The Fourteenth Amendment permits federal courts to exercise general or specific jurisdiction over a party. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022). General

jurisdiction reaches "all potential claims against the defendant regardless of their connection to the state." *Id.* General jurisdiction exists when a defendant's contacts "with the State are so 'continuous and systematic' as to render them essentially at home in the forum State. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction, by contrast, "only reaches claims that arise out of or relate to the minimum contacts a plaintiff can demonstrate between the defendant and the forum state." *Fischer*, 42 F.4th at 383. Specific jurisdiction exists where (1) there is some act "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); (2) the controversy "is related to or 'arises out of' a defendant's contacts with the forum," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)); and (3) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice," *Goodyear*, 564 U.S. 915 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Once the plaintiff has made out a prima facie case in favor of personal jurisdiction, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986)).

### B.    28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) seeks to "avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses and the public against avoidable inconvenience and expense." *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525–26 (D.N.J.

6

2000). The moving party has "the burden of establishing the need for transfer," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), and must submit "adequate data of record" to meet that burden, *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993). The decision to transfer rests within "the sound discretion of the trial court." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). However, "plaintiff's choice of venue should not be lightly disturbed," *Jumara*, 55 F.3d at 879, so long as the plaintiff's choice is "one among the permissible options," *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 526 (D.N.J. 2013).

### C.      First-To-File Rule

The first-to-file rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988). The rule "gives a court 'the power' to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Id.* "That authority, however, is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 972. The Court, accordingly, has "discretion to retain jurisdiction given appropriate circumstances justifying departure from the first-filed rule." *Id.*

## III.   **DISCUSSION**

### A.      Personal Jurisdiction

#### i.        *General Personal Jurisdiction*

For a corporation, like Wilmington, "general jurisdiction is only proper in states where the corporation is fairly regarded as 'at home,' which generally is restricted to the corporation's state of incorporation or the state of its principal place of business." *Fischer*, 42 F.4th at 383. For an

7

individual, like Baydiuk, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. Here, it is undisputed that Wilmington was incorporated and principally does business in Delaware, and that Baydiuk lives in New York. (*See* Compl. ¶¶ 7–8.) The Court, therefore, lacks general personal jurisdiction over Defendants.

### ii.    *Specific Personal Jurisdiction*

As discussed above, because the Court did not hold an evidentiary hearing, Plaintiff need only make out a prima facie case of personal jurisdiction. *Miller Yacht Sales*, 384 F.3d at 97. The Court, moreover, takes Plaintiff's jurisdictional allegations as true and draws all factual disputes in its favor. *Id.* To state a prima facie claim for specific personal jurisdiction, Plaintiff must show (1) Defendants purposefully directed their activities at New Jersey, (2) Plaintiff's claims arise out of or relate to those activities, and (3) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

### a.    Defendants' Activities

As discussed above, to establish specific personal jurisdiction, the defendant must have sufficient "minimum contacts with the forum state that show the defendant took a deliberate act reaching out to do business in that state." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). In other words, the plaintiff must show "the defendant deliberately 'reached out beyond' its home— by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

Here, Defendants argue they have no contacts with New Jersey. Wilmington, for instance, argues that (1) it was not involved in applying for, procuring, or delivering the Policy, (2) most,

"if not all of the activities relating to the procurement, application for and delivery of the Policy" actually took place in New York, (3) it owns the Policy as a securities intermediary on behalf of a customer, who has no connection to New Jersey, and (4) all its actions as a securities intermediary took place outside of New Jersey. (Wilmington Br. at 17–22, ECF No. 22-1.)

The Court disagrees. This case centers on a life insurance policy. As courts within this District have repeatedly found, "the state in which the policy was signed, and thus where this cause of action initially arose, is dispositive" for determining personal jurisdiction. *Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A.*, No. 17-2905, 2017 WL 4953904, at *3 (D.N.J. Nov. 1, 2017) (first citing *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001), and then citing *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 122–24 (1994)). *See also Ameritas Life Ins. Corp. v. Wells Fargo Bank, N.A.*, No. 21-2136, 2022 WL 279834, at *3–5 (D.N.J. Jan. 28, 2022); *Sun Life Assurance Co. of Can. v. Wells Fargo Bank, N.A.*, No. 21-9959, 2021 WL 5997986, at *3–5 (D.N.J. Dec. 20, 2021); *W. Coast Life Ins. Co. v. Wells Fargo Bank, N.A.*, No. 20-4350, 2021 WL 302919, at *4–7 (D.N.J. Jan. 29, 2021); *Am. Gen. Life Ins. Co. v. Oberlander Plan. Tr. ex rel. Oberlander*, No. 10-1902, 2011 WL 5040670, at *3–4 (D.N.J. Oct. 24, 2011).

Here, the Application states it was signed in Passaic, New Jersey. (Application at 6.) The signature block had signatures from Mohler (the insured), Simon (the agent), and Goodman (the owner), and one location designation, which stated "Passaic, NJ." (*Id.*) The Amendment to the Application also states it was signed in Passaic, New Jersey. (*See* Amendment.) Again, the signature block had signatures from Mohler, Simon, and Goodman, and one location designation, which reads "Signed at Passaic NJ." (*Id.*) The Illustration states it was "[p]resented in the state of: NJ." (Illustration at 1.) The Policy was addressed to the LKM Trust's address in Passaic, New Jersey. (*See* Policy.) The Policy also provided it was "subject to the laws of the state where the

application was signed," i.e., New Jersey. (*Id.* at 16.) Moreover, the New Jersey Department of Banking and Insurance approved the form of the Policy, which was UL0610NJ. (*See* Pl. Ex. 4, ECF No. 29-1 at *26; Policy.) In sum, the LKM Trust applied for a life insurance policy in New Jersey, amended the application in New Jersey, agreed to the policy in New Jersey, became the owner of a life insurance policy approved by the State of New Jersey, and the policy itself is governed by New Jersey law.

Had Plaintiff sued the LKM Trust, the inquiry would end here. Because Plaintiff brought this action against Wilmington and Baydiuk, the Court must consider whether their respective connections to the Policy sufficiently connects them to New Jersey. The answer is yes for both.

Wilmington argues the Court does not have personal jurisdiction over it because it "was not involved in the procurement, application or delivery of the Policy and has performed all actions in connection with the Policy from offices located in a state other than the State of New Jersey." (Wilmington Br. at 17.) Yet Wilmington voluntarily became the owner of a life insurance policy applied for in New Jersey, amended in New Jersey, issued in New Jersey, and written on a form approved by New Jersey regulators. And Wilmington submitted a claim to Plaintiff for death benefits under the Policy. (*See* Pl. Ex. 8, ECF No. 29-1 at *34–36.) The claim listed Wilmington as the corporate owner of the policy. (*Id.*) Wilmington, accordingly, had sufficient minimum contacts with New Jersey. *See Sun Life*, 2021 WL 5997986, at *4 (finding minimum contacts where securities intermediary "acquired a New Jersey policy and that it is the current record owner and beneficiary of the Policy."); *Lincoln*, 2017 WL 4953904, at *4 (D.N.J. Nov. 1, 2017) (finding minimum contacts where securities intermediary "own[ed] and [held] a significant interest in a policy that on its face is governed by New Jersey law."); *Guardian Ins. & Annuity Co., Inc. v. Ashok*, No. 24-8731, 2025 WL 2228286, at *3 (D.N.J. Aug. 4, 2025) (finding minimum contacts

10

where defendant "actively submit[ed] a claim . . . for death benefits from a life insurance policy issued in New Jersey, and later disput[ed] [the insurer's] determination that the Policy be rescinded."). *See also Ameritas*, 2022 WL 279834, at *4 ("Further, insofar as Defendant avers it is merely a downstream assignee over which Plaintiff must establish independent specific personal jurisdiction, this Court has previously rejected this argument where, as here, the underlying contract is a life insurance policy.").

Wilmington is also properly subject to New Jersey jurisdiction under a theory of successor jurisdiction. Successor jurisdiction "imputes jurisdictional contacts of a predecessor entity or individual to its successor." *Lincoln*, 2017 WL 4953904, at *4 (citing *Am. Ests. Wineries, Inc. v. Kreglinger Wine Ests. Pty., Ltd.*, No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008)). Successor jurisdiction arises when there is: "(1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction." *Id.* (quoting *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 823 (3d Cir. 2005)). Wilmington, for its part, argues it merely acted as an intermediary for the true owner of the Policy. (*See* Wilmington Reply.) But Wilmington was the record owner of the Policy and assumed its benefits and obligations. Wilmington "undoubtedly had the obligation to pay premiums . . . , was bound by the terms of the policy, and intended to benefit from the policy by receiving the payout upon the insured's death." *Lincoln*, 2017 WL 4953904, at *4.

As for Baydiuk, he demanded Plaintiff not distribute any death benefit under the Policy, disputes the ownership and beneficiaries of the Policy, and asserts he is the sole owner of the Policy. Baydiuk, in other words, purposefully directed his conduct at a New Jersey life insurance policy. *See Guardian*, 2025 WL 2228286, at *3 (finding minimum contacts where individual

11

defendant "sought to collect benefits from the Policy, which was contracted for in New Jersey" and later "disput[ed] [the insurer's] determination that the Policy be rescinded.").

Wilmington, meanwhile, points to evidence purportedly showing the Policy has no connection to New Jersey. Baydiuk's affidavit states Mohler signed the Application in New York with only Baydiuk present, and that Simon listed the Application as signed in New Jersey so Simon could earn a bigger commission. (Baydiuk Aff. ¶¶ 6–7, ECF No. 22-12.) The Policy states Mohler's medical exam took place in New York. (Wilmington Ex. 3 at *36–37.) New York records show Simon was a New York insurance agent. (*See* Wilmington Ex. 4, ECF No. 22-7.) And Goodman's declaration asserts "[t]o the best of my knowledge, I did not perform any work in my capacity as trustee of the [LKM] Trust in New Jersey." (Goodman Decl. ¶ 3, ECF No. 22-13.) Wilmington then asserts this case is factually similar to *AEI Life, LLC v. Lincoln Benefit Life Co.*, where the court found, after an evidentiary hearing that "plaintiff produced no believable evidence to prove that the policy was signed outside of New York," despite "a reference to Lakewood, New Jersey in the policy application's signature block." 225 F. Supp. 3d 136, 149 (E.D.N.Y. 2016).

But the court in *AEI Life* held an evidentiary hearing. *Id.* at 142–43. This Court did not. Therefore, for the purposes of determining personal jurisdiction, Plaintiff "is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97. So, the Court takes as true Plaintiff's factual allegations—i.e., that the Application and Amendment were signed in New Jersey for a trust with a New Jersey address, and the Policy was on an approved New Jersey form. And, to the extent Wilmington's proofs raise a factual dispute about where the Policy was signed, the Court resolves the question in Plaintiff's favor.[3] Taking

---

[3] In any event, Mohler's signature has no bearing on personal jurisdiction because she was not the Policy's owner or beneficiary. Her presence in New York does not "negate the [LKM] Trust's contacts with New Jersey for the purposes of executing the application materials." *Lincoln Benefit*, 2017 WL 4953904, at *3. Because the state in which the policy application is signed "is dispositive," other documents, such as "the medical exam . . . are not relevant for the

Plaintiff's jurisdictional facts as true and resolving factual disputes in Plaintiff's favor, Defendants had sufficient minimal contacts with New Jersey to support personal jurisdiction.

### b.    Relationship Between Contacts and Claims

Beyond a defendant having minimum contacts with a forum, the plaintiff's claims must "arise out of or relate to" those contacts. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017)). "The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing." *Id.* at 362. Demonstrating a claim "arises out" a defendant's contacts with a forum "requires a closer and more direct causal connection than that provided by the but-for [causation] test." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007). "The degree of relatedness required in a given case is inversely proportional to the overall 'intensity of [the defendant's] forum contacts.'" *Id.* at 320 (citation omitted). "The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *Id.* at 322.

Plaintiff's claims about the Policy's validity and beneficiary closely and directly relate to Defendants' contacts with New Jersey. Wilmington bought a New Jersey life insurance policy printed on a New Jersey form, paid the premiums, and submitted a death benefit claim. Baydiuk claims he is the sole beneficiary of that New Jersey life insurance policy and contested its distribution. Further, Defendants' "contacts with New Jersey are relevant to the merits of each of

_____

purposes of personal jurisdiction." *Id.* Finally, contrary to Goodman's claim that he did not sign the Application or Amendment in New Jersey, the documents indicate that he did. *W. Coast Life Ins. Co*, 2021 WL 302919, at *6 (rejecting trustee's claim that he did not sign application in New Jersey where application indicated trustee, agent, and insured "all signed the application in New Jersey."). By signing the Application, each signatory declared, "subject to criminal and civil penalties . . . that all answers on this application are true and correct." (Application at 6.) And in signing the Amendment, the signatories reaffirmed that the answers in the Application were true and correct. (*See* Amendment.)

13

Plaintiff's claims, and Plaintiff has shown a prima facie case of minimum contacts." *W. Coast Life Ins. Co.*, 2021 WL 302919, at *6 (concluding plaintiff's claims relating to validity of New Jersey life insurance policy arose out of and related to defendant's acquisition of that policy). Plaintiff's claims, in other words, arise out of and relate to the New Jersey life insurance policy Wilmington owns and Baydiuk claims he is the beneficiary of.

### c.      Fair Play and Substantial Justice

Lastly, the Court must consider "whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320). The Court should consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 477 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). After the plaintiff demonstrates minimum contacts, defendant has the "heavy" burden of showing "an absence of fairness or lack of substantial justice." *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993). Considerations of fairness will preclude personal jurisdiction only in "rare cases." *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 207 (3d Cir. 1998).

Here, however, Defendants do not argue personal jurisdiction would not comport with fair play and substantial justice. (*See, e.g.*, Wilmington Br .at 17–23.) "Courts in this district routinely find jurisdiction proper when a plaintiff satisfies the first two prongs of the specific personal jurisdiction analysis and the defendant offers no argument on the third prong." *W. Coast Life Ins.*

14

*Co.*, 2021 WL 302919, at *7 (collecting cases). Accordingly, Defendants have not met their "heavy" burden of demonstrating that fairness considerations preclude personal jurisdiction.

Because Defendants had sufficient minimum contacts with New Jersey, Plaintiff's claims arise out of those contacts, and exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice, the Court has personal jurisdiction over Defendants. So, the Court **denies** Defendants' motion to dismiss for lack of personal jurisdiction.

### B.    Transfer to S.D.N.Y.

Next, the Court turns to Defendants' motion to transfer the action to S.D.N.Y. under 28 U.S.C. § 1404(a). The Court performs "a two-part analysis to determine whether a transfer of venue is appropriate" under § 1404(a). *In re CityMD Data Privacy Litig.*, No. 24-6972, 2025 WL 2505655, at *3 (D.N.J. Sept. 2, 2025) (quoting *Genentech, Inc. v. Sandoz, Inc.*, No. 23-4085, 2024 WL 939692, at *3 (D.N.J. March 5, 2024)). The Court first examines "whether venue would be proper in the transferee district." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 337 (D.N.J. 2003). If the answer is "yes," the Court determines "whether a transfer would be in the interests of justice." *Id.* This is an "individualized, case-by-case" analysis. *In re CityMD*, 2025 WL 2505655, at *3 (quoting *Telebrands Corp. v. Mopnado*, No. 14-7969, 2016 WL 368166, at *10 (D.N.J. Jan. 12, 2016)).

In weighing a § 1404(a) motion, the Court must consider three factors "enumerated under the statute—convenience of the parties, convenience of the witnesses, and the interests of justice—along with all other relevant private and public factors." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). Ultimately, the question is whether a case can "more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Id.*

15

### i.   *Plaintiff Could Have Brought This Case in S.D.N.Y.*

Transfer under § 1404(a) is proper only if "plaintiff had an 'unqualified right' to bring the action in the transferee forum." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970). This means "venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants." *Id.*

### a.   Subject Matter Jurisdiction

S.D.N.Y. would have subject matter jurisdiction over this action. Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may exercise jurisdiction only where authorized by the Constitution or statute. *Id.* One statute, 28 U.S.C. § 1332(a), grants federal courts the power to hear cases where "the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."

Here, there is complete diversity. An individual is "a citizen of the state where he is domiciled." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). A corporation "is a citizen both of the state where it is incorporated and of the state where it has its principal place of business." *Id.* A national bank is a citizen of "the State designated in its articles of association as its main office." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006) (quoting 28 U.S.C. § 1348). Plaintiff, a corporation, is a citizen of Nebraska (where it is incorporated), and Illinois (where it principally does business). (*See* Supp. Corporate Disclosure Statement, ECF No. 45.) Wilmington, a bank, is a citizen of Delaware, where its main office is located. (Compl. ¶ 7.) Baydiuk, an individual, is a citizen of New York, where he lives. (*Id.* ¶ 8.)

And the amount in controversy exceeds $75,000. "Although declaratory judgment actions do not directly involve the award of monetary damages, 'it is well established that the amount in controversy [in such actions] is measured by the value of the object of the litigation.'" *Auto-*

16

*Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 397–98 (3d Cir. 2016) (alteration in original) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977)). Here, the value of the object in litigation is a $10 million life insurance policy.

Accordingly, S.D.N.Y. would have subject matter jurisdiction over this action.

### b.    Personal Jurisdiction

In S.D.N.Y., as here, personal jurisdiction "is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." *Henderson v. I.N.S.*, 157 F.3d 106, 123 (2d Cir. 1998) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). The Court, therefore, looks to New York state law to supply a basis for personal jurisdiction. "Where personal jurisdiction is satisfied under New York's jurisdictional statutes, the court must also confirm that the exercise of personal jurisdiction comports with the Due Process Clause of the U.S. Constitution." *Fan v. PHL Variable Life Ins. Co.*, No. 18-1288, 2019 WL 1129318, at *3 (S.D.N.Y. Mar. 12, 2019). "In New York, there are two ways to establish personal jurisdiction over a defendant: (1) 'general jurisdiction' under N.Y. C.P.L.R. § 301; and (2) 'specific jurisdiction' under N.Y. C.P.L.R. § 302." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 103 (S.D.N.Y. 2015).

Under CPLR § 301, a New York court "may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." The section allows New York courts to exercise general personal jurisdiction over individuals who are "domiciled in New York, have a physical presence in New York, or consent to New York's exercise of jurisdiction." *Pinto-Thomaz v. Cusi*, No. 15-1993, 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015). Here, Baydiuk is a New York resident. (Compl. ¶ 8.) So, CPLR § 301 would have allowed S.D.N.Y. to exercise personal jurisdiction over Baydiuk.

17

CPLR § 301 would also confer personal jurisdiction over Wilmington because it consented to New York's jurisdiction. "A variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 131–32 (2d Cir. 2022) (quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). Moreover, a defendant's actions, whether voluntary or not, may imply consent to personal jurisdiction. *Id.* at 132 (quoting *Ins. Corp. of Ir.*, 456 U.S. at 704–05). A party's consent to jurisdiction in one case generally "extends to that case alone." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991). However, if a party brings suit in a forum, it "submit[s] itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants." *V&A Collection*, 46 F.4th at 132 (quoting *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932)).

Here, Wilmington sued Plaintiff and Baydiuk in S.D.N.Y. for a declaratory judgment that the Policy is valid. (*See* Wilmington Action.) It consented to S.D.N.Y.'s jurisdiction with respect to that issue. Consequently, had Plaintiff filed this suit in S.D.N.Y., S.D.N.Y. would have been able to exercise personal jurisdiction over both Defendants.[4]

### c.      Venue

Venue is appropriate in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

---

[4] Plaintiff argues that the Court should deny Wilmington's transfer motion because S.D.N.Y. does not have personal jurisdiction over Plaintiff. (*See* Pl.'s Opp'n at 12–16.) This answers the wrong question. The Court must determine whether *Plaintiff* could have brought the action in S.D.N.Y against *Defendants*. *Shutte*, 431 F.2d at 24. Plaintiff was and is "eligible to bring suit regardless of where it is subject to personal jurisdiction, including in [S.D.N.Y.]" *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 488 n.29 (D.N.J. 1993). Rather, "it is personal jurisdiction over a *defendant* that is significant for venue purposes." *Id.*

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Venue would not be proper under 28 U.S.C. § 1391(b)(1). Baydiuk lives in S.D.N.Y., but Wilmington is not a New York resident.

The Court, therefore, turns to whether venue would be proper under 28 U.S.C. § 1391(b)(2), i.e., that S.D.N.Y. is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Substantial means that, "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005). This is "more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005).

Here, a substantial portion of the events giving rise to Plaintiff's claims occurred in S.D.N.Y. This case is about the validity of a life insurance policy. Simon solicited the Policy in New York; Mohler allegedly signed the Policy in New York; the trustee of the LKM Trust is based in New York; and, particularly relevant to this action, both Baydiuk and Wilmington contested the Policy in New York. In short, significant events giving rise to the Policy itself and calling the Policy's validity into question took place in S.D.N.Y.

Consequently, this case could have been brought in S.D.N.Y.

### ii.  Transfer to S.D.N.Y. is in the Interests of Justice

Having determined the action could have been brought in S.D.N.Y., the Court turns to whether transfer to S.D.N.Y. is in the interests of justice. The Court concludes that it is.

### a.  Private Interest Factors

The private interest factors include: (1) "plaintiff's forum preference as manifested in the original choice" of venue; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

The first two factors—Plaintiff's and Defendants' respective choices of forum—largely negate each other. The plaintiff's choice of venue "is a paramount consideration in any determination of a transfer request," *Shutte*, 431 F.2d at 25, and "should not be lightly disturbed," *Jumara*, 55 F.3d at 879. Yet "the plaintiff's choice 'is not necessarily decisive,' particularly where 'the central facts of the lawsuit did not occur' in the plaintiff's chosen forum." *Def. Distributed v. Platkin*, 617 F. Supp. 3d 213, 233 (D.N.J. 2022) (quoting *Interlink Prods. Int'l, Inc. v. Crowfoot*, No. 20-10566, 2020 WL 6707946, at *7 (D.N.J. Nov. 16, 2020)). Likewise, "a plaintiff's choice of forum is accorded less weight when the selected forum is not the plaintiff's home forum." *Acosta v. Costa*, No. 23-21557, 2024 WL 1117585, at *2 (D.N.J. Mar. 14, 2024). And a defendant's "indifference to the forum cuts against" plaintiff's choice. *Id.* Here, many of the central facts in this case took place in New York, not New Jersey. Plaintiff, moreover, is not at home in

New Jersey. And Defendants prefer New York as a forum, filing suit there to contest the validity of the Policy.

The third factor—whether the claim arose elsewhere—weighs against transfer. A cause of action on a life insurance policy arises where the policy was signed. *Lincoln Benefit Life Co*, 2017 WL 4953904, at *3. Here, the Policy states it was signed in New Jersey. But the Court accords this only limited weight because there is ambiguity as to whether any of the signatories actually signed the Policy in this state.[5] This factor, consequently, weighs somewhat against transfer.

The fourth factor—the convenience of the parties based on their relative physical and financial conditions—weighs in favor of transfer. A national life insurance company's litigation resources almost certainly outweigh those of an individual. In other words, based on relative financial condition, New Jersey is far less financially convenient for Baydiuk than it is for Plaintiff.

The remaining factors—location of witnesses and evidence—are neutral. While it is true that all living witnesses in this case live in New York, and relevant documents are probably in New York, these factors only matter if such witnesses or documents could not be produced elsewhere. *Jumara*, 55 F.3d at 879. Because Defendants do not allege that the witnesses or evidence could not be produced in an alternative forum, these factors do not bear on the outcome.

In sum, private interest factors one, two, five, and six are neutral. Factor three weighs against transfer. Factor four weighs in favor. Accordingly, the private interest factors are, on net, neutral.

---

[5] The Court notes that it takes Plaintiff's allegations about where the Policy was signed as true for the purposes of establishing personal jurisdiction. *Miller Yacht Sales*, 384 F.3d at 97. But it need not do so on a motion to transfer. Rather, Defendants must provide "adequate data of record" to meet their burden. *Ricoh Co.*, 817 F. Supp. at 480. Here, the "adequate evidence of record" casts doubt on whether the Policy was actually signed in New Jersey. While the Court could not consider that evidence on a motion to dismiss for lack of personal jurisdiction, it can and does do so on this motion to transfer.

### b.      Public Interest Factors

The public factors include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80.

The first factor—enforceability of judgment—is neutral because both forums are federal courts. *Def. Distributed*, 617 F. Supp. 3d at 234 ("[T]his factor has little relevance because it is unlikely that there would be any significant difference in the difficulty of enforcing a judgment rendered by one federal forum or the other." (citation omitted)).

The second factor—practical considerations—weighs heavily in favor of transfer. Here, the Court evaluates whether transfer "could make the trial easy, expeditious, or inexpensive." *LG Elecs., Inc. v. First Int'l Comput., Inc.*, 138 F. Supp. 2d 574, 592 (D.N.J. 2001). The Court considers whether transfer would promote "judicial economy and an interest in avoiding duplicative litigation in different courts." *Def. Distributed*, 617 F. Supp. 3d at 234.

"The interests of justice strongly favor transfer of a case to another jurisdiction where a related matter is pending." *LG Elecs., Inc.*, 138 F. Supp. 2d at 592. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960). District courts, therefore, "frequently transfer cases when the record indicates a related action is pending in an appropriate alternative forum." *Am. Tel. & Tel. Co. v. MCI Commc'ns Corp.*, 736 F. Supp. 1294, 1307 (D.N.J. 1990) (collecting cases). "Where, as here, related lawsuits are pending elsewhere, transferring a

case serves not only private interests but also the interests of justice because it eliminates the possibility of inconsistent results, and conserves judicial resources." *CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004). Here, an identical lawsuit on the validity of the Policy is pending in S.D.N.Y. As discussed above, that forum is appropriate. Maintaining parallel litigation involving the same question about the same subject matter in two different judicial districts is precisely what § 1404(a) was designed to prevent. This factor, accordingly, weighs heavily in favor of transfer.

The third factor—court congestion—is neutral. The parties do not raise the issue, and it is not usually of "great importance" anyway. *Def. Distributed*, 617 F. Supp. 3d at 237. Both districts are quite busy.[6]

The fourth factor—local interest in deciding local controversies at home—is neutral. This factor examines "which of the two potential districts maintains a greater interest in the action." *In re CityMD*, 2025 WL 2505655, at *10 (quoting *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008)). Typically, the district where "a substantial amount of the alleged culpable conduct occurred" has the greater interest in the action. *Id.* (quoting *Coppola*, 250 F.R.D. at 201). Plaintiff argues New Jersey has the greater interest in the action because the case involves a New Jersey life insurance policy. It is, of course, true that at the center of this case is a New Jersey life insurance policy. Yet this is "hardly a 'localized dispute.'" *CIBC*, 309 F. Supp. 2d at 652. A New York insurance agent solicited the Policy to Mohler in New York; Mohler, a New York resident, apparently signed the Policy in New York; and the trustee of the LKM Trust (the first owner of the Policy) was based in New York. This case is about a New Jersey life insurance policy that

---

[6] Though this District is the busiest in the country. *See* Admin. Off. of U.S. Cts., *Combined Civil and Criminal Federal Court Management Statistics* (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf.

arose in New York among New York residents. Both fora retain equal interests in this action, and this factor is neutral.

The fifth factor—public policies of the forum—is also neutral. To be sure, New Jersey unquestionably has a public policy interest in its life insurance policies. Yet this was a Policy insuring a New York resident, solicited by a New York insurance agent, and owned at first by a New York trustee. New York has an interest in protecting its residents. This factor, accordingly, weighs in favor of neither party.

The sixth factor—the trial court's familiarity with applicable law—is neutral. Federal courts are "capable of applying the law of other states." *In re CityMD*, 2025 WL 2505655, at *10 (quoting *Reed v. JTH Tax, Inc.*, No. 07-1804, 2007 WL2416445, at *6 (D.N.J. Aug. 21, 2007)).

In sum, the private interest factors are neutral and the public interest factors strongly favor transfer. Because litigation on the precise issue before this Court—the validity of the Policy—is already pending in S.D.N.Y., transfer will simplify the proceedings, avoid duplicative parallel litigation in multiple districts across multiple Circuits, and conserve judicial resources. The Court, therefore, **transfers** this action to S.D.N.Y.[7]

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, transfer, or stay the action (ECF Nos. 22, 41) are **GRANTED in part**. The motion to dismiss is **DENIED**, the motion to transfer is **GRANTED**, and the motion to stay is **DENIED as moot**. This action is **TRANSFERRED** to the Southern District of New York. An appropriate Order accompanies this Opinion.

**DATED: 3/5/2026**

JULIEN XAVIER NEALS
United States District Judge

---

[7] And, because the Court grants Defendants' transfer motions, it is unnecessary to decide whether to stay the action under the first-to-file rule.

24